UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 21-62510-CIV-MORENO**

THE CORNFELD GROUP, LLC,

      Plaintiff,

vs.

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON SUBSCRIBING TO POLICY NO.
AMR-55418-01, INDIAN HARBOR
INSURANCE CO., QBE SPECIALTY
INSURANCE CO., STEADFAST
INSURANCE CO., GENERAL SECURITY
INDEMNITY CO. OF ARIZONA, UNITED
SPECIALTY INSURANCE CO.,
LEXINGTON INSURANCE CO.,
PRINCETON EXCESS AND SURPLUS
LINES INSURANCE CO.,
INTERNATIONAL INSURANCE CO. OF
HANNOVER, S.E.,

      Defendants.

_____/

### ORDER GRANTING IN PART DEFENDANTS' RENEWED MOTION TO APPOINT NEUTRAL UMPIRE

THIS CAUSE came before the Court upon Defendants' Renewed Motion to Appoint Neutral Umpire **(D.E. 48)**, filed on **October 27, 2022**.

THE COURT has considered the motion, the response, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED in part. The parties may file additional briefs by **December 15, 2022** regarding their recommendations as to whom the Court should select as a neutral umpire.

## I.     **Background**

This is not the first time the United States District Court has been asked to appoint a neutral umpire by these parties. On June 21, 2019, following a bench trial, Judge Dimitrouleas appointed Paul E. Middleton as an umpire in the underlying coverage dispute between these parties. *The Cornfeld Group, LLC v. Certain Underwriters at Lloyd's London, et al.*, No. 19-60626-CIV-DIMITROULEAS. The order appointing the neutral umpire states: "The Arbitration Tribunal shall review all issues between the parties, including all issues of coverage and issues regarding the amount of loss. The Arbitration Tribunal has the power to fix all procedural rules for the arbitration and the Arbitration Tribunal will have the power to issue any orders on any matter."

Plaintiff contends the original arbitration tribunal that decided the parties' coverage and damages issues should remain in place to decide Plaintiff's bad faith claim. Plaintiff, however, did not raise this bad faith claim before the original arbitration panel. Instead, Plaintiff waited almost a year after the original arbitration concluded to file the statutory bad faith claim in state court. Defendants removed the action and moved to compel arbitration of the bad faith claim, which this Court granted. Now that the bad faith claim is compelled to arbitration, the Defendants are asking this Court to appoint a *new* neutral umpire. The original umpire, Mr. Paul Middleton, is an expert in property damage issues and insurance claims, and as such, Defendants argue that he is not an expert on the law of bad faith, and he is quite possibly a fact witness in the bad faith proceeding.

The issue is whether the prior order issued by Judge Dimitrouleas appointing the

neutral umpire is binding in this case or whether the Court must appoint a new one.[1] Notably, the original arbitration award states that "[t]he panel agrees that this award is inclusive of all matters in difference between the principal parties of the Award and does not include any types(s) of exemplary, punitive, multiple, consequential, or other damages of a similar nature."

## II.      Legal Standard and Analysis

The Federal Arbitration Act, 9 U.S.C. § 5, requires courts to intervene to select an arbitrator or umpire "upon the application of either party" if the parties "fail to avail themselves of a method for arbitrator selection within their agreement or 'if for any reason there shall be a lapse in the naming for an arbitrator.'"[2] *Gulf Guar. Life Ins. Co. v.*

---

[1] The relevant contract provision reads as follows:

Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his own Arbitrator and give written notice thereof to the Respondent. Within thirty days of receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred.

Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.

The Arbitration Tribunal shall have the power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in discretion think fit.
***
The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature.

[2] Section 5 of the FAA, entitled "Appointment of arbitrators or umpire," states as follows:

If in the agreement provision be made for the method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be

*Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 489 (5th Cir. 2002). "The statute thus illustrates congressional intent to 'facilitat[e] arbitration when impasse in selection' of arbitrators has occurred, but 'contemplates that the parties must follow the contractual procedure for arbitration selection if such exists.'" *BP Exploration Libya Ltd. v. Exxonmobil Libya Ltd.*, 689 F.3d 481, 491 (5th Cir. 2012) (quoting *Pac. Reins. Mgmt. Corp. v. Ohio Reins. Corp.*, 814 F.2d 1324, 1327 (9th Cir. 1987)). Congress predicted breakdowns in the arbitrator selection process and § 5 is intended to allow parties access to a neutral forum to correct the failure. *Stop & Shop Supermarket Co. LLC v. UFCQ Local 342*, 246 F. App'x 7, 11 (2d Cir. 2007).

Under the terms of the arbitration agreement, each side selects their appointed arbitrator. The Defendants selected Judge Richard Suarez, and the Plaintiff insists the original arbitration panel should decide the bad faith claim. Under the terms of the agreement, the Defendants are entitled to select their appointed arbitrator. Under § 5 of the Federal Arbitration Act, the Court is constrained by the agreement, and therefore, cannot require the Defendants to use the same appointed arbitrator they selected in the original coverage proceeding. Likewise, the Court cannot compel Plaintiff to select a particular arbitrator as the agreement allows each party to select their own party arbitrator.

The Agreement states that the selection of an umpire shall be "by mutual agreement only." The parties have reached an impasse regarding the appointment of an umpire, which triggers § 5 and allows the Court to appoint a neutral umpire. The source

---

provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

of the parties' impasse, however, must be resolved as the Plaintiff contends that the original arbitration panel has jurisdiction over this bad faith claim. Plaintiff makes this argument even though it did not raise this bad faith claim in arbitration and waited almost a year after the original arbitration concluded before filing this claim in state court.

Notably, when Judge Dimitrouleas decided who to appoint as an umpire in the original proceeding, the Plaintiff represented that it wanted an umpire that understood construction and property damage in Florida. In appointing Mr. Paul Middleton as the umpire in the original arbitration, Judge Dimitrouleas said that the umpire "should have experience in construction and remediation practice and costs in the state of Florida." This reasoning for appointing Mr. Middleton as an umpire no longer applies as his qualifications are not essential to the resolution of the bad faith claim. Judge Dimitrouleas also said that the "Arbitration Tribunal shall review the issues between the parties, including all issues of coverage and issues regarding the amount of loss." This order is reasonably read to mean that the arbitration tribunal should resolve the then issues between the parties, and not all issues in perpetuity. This reading is also supported by the language of the arbitral award itself. The Final Arbitration Award indicated that it was "inclusive of all matters of difference between the principal parties." Once an arbitration tribunal issues an award, the panel is *functus officio* meaning it has no power to proceed further. *United Steelworkers of Am., AFL-CIO-CLC v. Ideal Cement Co.*, 762 F.2d 837, 842 (10th Cir. 1985); *McClatchy Newspapers v. Central Valley Typographical Union No. 46, Int's Typographical Union*, 686 F.2d 31, 734 (9th Cir. 1982) ("It is (a) fundamental common law principle that once an arbitrator has made and published a final award his authority is exhausted and he is functus officio and can do nothing more in regard to the

subject matter of the arbitration.").   Because the bad faith claim was not part of the original arbitration and the arbitration tribunal issued a final award, the original arbitration panel's authority is exhausted and it is *functus officio*.

Florida law also supports this decision as a statutory bad faith claim is considered to be "separate and independent" from any underlying breach of contract claim that has been previously resolved in arbitration and bad faith claims do not accrue until after the adjudication of the underlying breach of contract. *Rivera v. LM Gen. Ins. Co.*, No. 20-cv-1012-T-60SPF, 2020 WL 6273455 (M.D. Fla. July 9, 2020). Given that the bad faith claim is an independent claim under Florida law, the Court does not view Judge Dimitrouleas's order as encompassing this claim. Rather, that order appointed an umpire with qualifications pertinent to resolve the issues of coverage and damages that existed between the parties at the time.

Plaintiff's own actions belie the contention that the original arbitration panel must resolve the bad faith claim as Plaintiff chose not to raise the claim in arbitration, filed this claim in state court, and then, opposed arbitration of the claim in this Court. Rather, Judge Dimitrouleas's order, the arbitral award, and the Plaintiff's own actions support the conclusion that the original arbitration tribunal concluded its role and was *functus officio*. It did not retain jurisdiction to decide a possible future bad faith claim.

Having found the original tribunal did not retain jurisdiction, the Court finds that § 5 requires this Court to appoint a neutral umpire. The Court will allow the parties to provide additional briefing on the qualifications of proposed umpires for appointment by the Court. Of course, Plaintiff may brief the merits of appointing Mr. Middleton to serve as a neutral umpire over this bad faith action and Defendants may file a brief on the

merits of appointing Mr. Andrew Naldona. The parties may also recommend different umpires in their respective briefs. The parties may file their respective briefs by **December 15, 2022**.

      DONE AND ORDERED in Chambers at Miami, Florida, this _____ 6 _____ of December 2022.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record